In re: **BRIDGESTONE/FIRESTONE, INC. TIRES PRODUCTS LIA-BILITY LITIGATION**

Sofia de Manez Lopez et al., Plaintiffs,

v.

**Ford Motor Company et al., Defendants.**

Nos. IP 00–9374–C B/S, IP 03–5790–C–B/S. MDL No. 1373.

United States District Court, S.D. Indiana, Indianapolis Division.

Nov. 14, 2006.

———

Kevin Dubose, Alexander Dubose Jones & Townsend, Houston, TX, Roger H. Reed, Reed Carrera & McLain LLP, Edinburg, TX, Gordon E. Tabor, Tabor Law Firm, Indianapolis, IN, Robert B. Waltman, Waltman & Grisham, College Station, TX, for plaintiff.

Evan N. Kramer, Thompson Coe Cousins & Irons LLP, Houston, TX, Randall Riggs, Locke Reynolds LLP, Indianapolis, IN, for defendant (Ford).

Mark Merkle, Krieg Devault LLP, Indianapolis, IN, Knox D. Nunnally, Phillip B. Dye, Jr., and Jennifer H. Davidow, Vinson & Elkins, Houston, TX, for defendant (Bridgestone).

*ENTRY REGARDING ISSUES ON RE-MAND FROM THE SEVENTH CIRCUIT RELATING TO FORUM NON CONVENIENS*

BARKER, District Judge.

In an Order dated, February 27, 2004, this court granted Defendants Bridgestone/Firestone's and Ford Motor Company's *forum non conveniens* motion dismissing the Plaintiffs' complaint stemming from the 2002 death of their husband and father, Jose Samuel Mañez–Reyes ("Mr.Mañez–Reyes"), as a result of the roll-over of the Ford Explorer he was driving in Veracruz, Mexico. At the time the complaint was dismissed, the Plaintiff, Sofia Lopez de Mañez ("Ms.Lopez"), who sued on behalf of herself and her children, was a Mexican resident, and the parties had stipulated that Mexico was an adequate and available alternative forum. The Mañez–Reyes family appealed the dismissal of their complaint, and, during the pendency of the appeal, Plaintiffs' counsel submitted new "facts" to the Seventh Circuit which created wrinkles in a case that had otherwise "look[ed] like an easy candidate for a straightforward affirmance." *In re Bridgestone/Firestone, Inc., Tires Product Liability Action*, 420 F.3d 702 (7th Cir.2005). Specifically, six months after the appeal was argued,[1] Plaintiffs informed the Seventh Circuit that:

> [T]he Mañez–Reyes family sued Bridgestone/Firestone and Ford in the Fourth Court of First Instance for Civil Cases of the First Judicial District in Morelos, Mexico. That court determined that it did not have jurisdiction to hear the case, a ruling "confirmed" by the Auxil-

---

1. The Seventh Circuit heard oral argument on December 10, 2004. The plaintiffs did not argue in their briefs or during oral argument that Mexico was not an available forum. On June 9, 2005, the Plaintiffs filed a letter of supplemental authority and/or request for judicial notice in the Seventh Circuit. Attached to the letter were decisions from a trial court and a court of appeals in Morelos Mexico. Defs.' Memo. in Supp. of Sanctions Exs. F, G, and H.

iary Chamber of the Supreme Court of Justice of the State of Morelos.

*In re Bridgestone/Firestone, Inc.,* 420 F.3d 702, 705 (7th Cir.2005). From this information, the Seventh Circuit stated that "it appears that the very first *forum non conveniens* requirement—an available alternative forum—is no longer satisfied. Mexico, apparently, has refused to hear the case." *Id.*

■ Despite the Seventh Circuit's "substantial misgivings about the plaintiffs' actions" related to the lawsuit filed in Mexico,[2] the Court of Appeals determined that it did "not have an adequate record to assess whether the plaintiffs' actions were taken in good faith" and therefore thought it "prudent to vacate the district court's dismissal and order a remand so that the district court can thoroughly explore the circumstances surrounding the Morelos decisions." *Id.* at 706. The Seventh Circuit directed that, if the district court determines:

that the Morelos decisions are not entitled to recognition or that the plaintiffs did not act in good faith and manipulated the dismissal of their case in Mexico, the district court should regard itself as free once again to dismiss this complaint. Although it is possible that as a matter of Mexican law, a court in Veracruz might honor the Morelos decisions no matter what, for purposes of U.S. law a forum may not become unavailable by way of fraud.

*Id.* at 707.

In accordance with the Seventh Circuit's mandate, on September 5 and 6, 2006, we conducted an evidentiary hearing[3] to thoroughly explore the circumstances surrounding the Morelos courts' decisions and to specifically answer the questions referred to us by the Seventh Circuit, to wit: 1) were the plaintiffs' actions taken in good faith?; and 2) are the Mexican court decisions entitled to recognition here?[4] This remand did not require an outright "do over" of our determination of the general availability of Mexico as an alternative forum.[5] Our inquiry was to be limited to

2. The appellate court expressed specific concerns about Defendants' allegations that Plaintiffs had not informed Bridgestone/Firestone of the Mexican proceedings, nor did they inform the Morelos courts of the ongoing proceedings in the United States. *Id.* at 706. The Seventh Circuit was also unclear as to why the plaintiffs had sued the defendants in the Mexican State of Morelos, instead of Veracruz where the accident occurred. *Id.* We construe these specific concerns as illustrative of the Seventh Circuit's "misgivings about the plaintiffs' actions" and not, as Plaintiffs suggest, as a limitation on the issues and questions which must be investigated. Pls.' Resp. Br. at 1.

3. This evidentiary hearing was preceded by a nearly year long period of discovery by the parties, during which the court was required to rule on numerous motions and conduct numerous conferences. *See e.g.,* Entry on discovery motions [Docket No. 76]; Entry on discovery issues [March 8, 2006; Docket No. 65]. In addition, a pre-hearing conference was held before Judge Barker and Magistrate Judge Shields on July 19, 2006.

4. Magistrate Judge Shields has noted that both of these questions relate to the underlying issue of "whether Mexico is—or would have been absent some impropriety—an available forum." Entry on Discovery dated 03/08/06 [Docket No. 65], Entry on Discovery Issues dated 04/25/06 [Docket No. 76]; see Pls.' Response at 2. This issue provides context for the two questions posited by the Seventh Circuit, but it is not the question presented on remand. Magistrate Judge Shields's comment was made in the course of her issuance of a ruling on the scope of discovery; we are confident that she was not attempting to redefine the issues framed by the Seventh Circuit. See Defs.' Reply at 4.

5. Because we are not concerned with the availability of Mexico as a forum in general, but only with the two specific questions referred to us by the Seventh Circuit, we do not consider what Plaintiffs' attorneys describe as "numerous trial and appellate decisions from at least ten other Mexican states, including Veracruz, in which the courts have refused jurisdiction in cases like this one." Pls.' Resp. at 4.

whether the Morelos orders were obtained in good faith, and, if so, if they are entitled to recognition in this court.

We have carefully considered the evidence presented at the hearing and the parties' pre- and post-hearing filings in reaching the following conclusions: The evidence establishes that in filing the case in Morelos, Mexico, the attorneys for Plaintiffs acted with the clear purpose of having the case dismissed; and, in seeking that result, manipulated the process to insure that the dismissal would be based on a particular reason that was calculated to improve the chances of the dismissal being sustained on appeal. In addition, the Morelos court's conclusion that it lacked territorial competency [6] over the defendants and therefore could not try the matter pending before it [7] was obtained in bad faith and therefore is not subject to recognition by courts in the United States.

## I. Background of Morelos Court Proceedings

### A. Mexican Lawyers are Hired

Plaintiffs' U.S. lawyers, Alberto Guerrero and Roger Reed,[8] retained Dr. Leonel Pereznieto ("Dr.Pereznieto") as Mexican counsel to pursue their claims in the Mexican courts. They learned of Dr. Pereznieto from an expert declaration Dr. Pereznieto prepared in support of other plaintiffs' claims in the Firestone/Ford litigation. Defs.' Brief at 6; citing Defs' Exh. 22; Tr–I,[9] p. 190, lines 15–25; p. 191, lines 1–8; p. 192, lines 3–7; p. 203, lines 14–25, p. 204, lines 1–3. Dr. Pereznieto hired to assist in this litigation Juan Carlos Guerrero Valle and Rosa Maria Avila Fernandez, both of whom are attorneys specializing in litigation as well as former students of Dr. Pereznieto. Defs.' Brief at 7; citing Tr–I, p. 208, lines 1–19; Tr–II, p. 272, lines 13–21.

Dr. Pereznieto, Juan Carlos Guerrero Valle, and Rosa Maria Avila Fernandez (hereinafter "the Mexican lawyers") were given two tasks by the U.S. lawyers: First, they were to establish Ms. Lopez's right to bring suit on behalf of her children and her husband's estate.[10] Defs.' Exh. 1 (Kevin Dubose's notes from July 6, 2004 meeting); Defs.' Findings at 4. Second, they were to file suit in Cuernavaca, the capital city of Morelos, seeking damages for the death of Mr. Mañez–Reyes. *Id.*

### B. Territorial Competency

Based on expert testimony presented at the evidentiary hearing, we are informed that, under Mexican law, Mexican courts cannot exercise jurisdiction over a particular case if they lack "competence." While there are several types of jurisdictional competence, the form of competence at issue here is "territorial" competence. Territorial competence in a "personal action" requires that the defendant (or at least one of the defendants, if there are more than one) be domiciled within the court's jurisdictional territory. (G. de Castilla, Tr–I, p. 55, lines 1–18—p. 64, line 4; p. 145, lines 22—p. 146, lines 5; J.

---

6. Territorial competency is similar to personal jurisdiction in the United States. *See infra.*

7. See Def. Exh. 9 (last page).

8. Alberto Guerrero and Roger Reed are lawyers with the Texas-based firm of Reed, Carrera & McLain (now Reed, McLain & Guerrero). An appellate specialist, Kevin Dubose, was hired to assist Plaintiffs' counsel with their appeal to the Seventh Circuit.

9. All references to "Tr–I" and "Tr–II" are to Volumes I and II, respectively, of the transcript of the evidentiary hearing held on September 5–6, 2006.

10. The heirship proceeding began in July of 2004 and concluded on September 24, 2004, with an order appointing Ms. Lopez as successor to her late husband. Defs.' Exh. 5.

Santos–Coy, Tr–II, p. 333, lines 20–p. 335, lines 10, p. 338, lines 4–17.) Gonzalez de Castilla del Valle, an expert on Mexican law, testified that territorial competency in Mexico is similar to personal jurisdiction in the United States. Defs. Brief at 9–10; citing Tr–I, p. 60, lines 4–p. 61 lines 1–25; Tr–I, p. 71, lines 22–25—p. 72, lines 1–13. By statute, the territorial competency of a court may be waived or extended—thereby avoiding the requirement of domicile—under certain circumstances. Defs.' Exh. 41 (Morelos Civil Procedure Code arts. 24, 25, and 26 § II); Tr–I, p. 70, lines 13–25—p. 71, lines 1–15). Such a circumstance may arise when the defendants are outside the court's territorial competency but there is nonetheless a point of contact within the forum.

## C. Complaint Filed in Morelos

Plaintiffs, through the Mexican lawyers, chose to file their complaint in the State of Morelos. Morelos had no point of contact with this case because neither Defendants nor Plaintiffs were domiciled in Morelos and the accident did not occur in Morelos.[11] Defs.' Brief at 9; citing Tr–I, p. 47, lines 20–25—p 48, lines 1–2. The Plaintiffs' U.S. lawyers maintain that Morelos was chosen as the forum because a Firestone affiliate, Bridgestone Firestone de Mexico, S.A. de C.V., had located a factory in Cuernavaca, Morelos. Defs.' Brief at 10; citing Tr–II, p. 278, lines 24–25—p. 279, lines 1–16. Although Bridgestone Firestone de Mexico was not sued by Plaintiffs, Plaintiffs' U.S. lawyers stated that they believed that the presence of Bridgestone Firestone de Mexico in the town of Cuernavaca might suffice in establishing territorial competence in Morelos under a veil-piercing theory.[12]

When Plaintiffs filed the complaint in Morelos, the Defendants were not within the court's territorial competency, which is to say, they were not domiciled in Morelos and thus the court could not immediately admit the case. Defs.' Brief at 3. Emilio

**11.** The section in the complaint referencing the court's competency is limited to one sentence: "Within the jurisdiction of this Court there is a company known as Bridgestone Firestone De Mexico, S.A. de C.V., which, together with the Defendant, Bridgestone/Firestone North American Tire, L.L.C., are subsidiaries of the same company known as Bridgestone Americas Holding, Inc." Defs.' Exh. 23 at Exh. A, numbered p. 12. In Mexico, a party's initial pleading must be fully developed factually and legally because it may not be amended. The chapter on competency in the complaint is expected to contain not just facts, but legal reasoning to demonstrate that the court is competent to hear the case. Defs. Br. at 15, citing Tr–I, p. 49, lines 5–8. Emilio Gonzalez de Castilla del Valle testified that Plaintiffs' submission to the Morelos court regarding competency was insufficient by Mexican standards. Tr.-I, p. 75, lines 9–14.

**12.** Tr–II, p. 240, lines 5–6, 15–16. Attorney Guerrero testified at the evidentiary hearing that:

the best we could do to make a colorable argument for jurisdiction or—excuse me, territorial competence or jurisdiction against North American Firestone, was to pursue in effect a piercing the veil type of argument by filing the suit in Morelos where a related Firestone entity in fact had a presence, if not a domicile.

Tr–II, p. 279, lines 11–16. Interestingly, Bridgestone Firestone de Mexico is actually headquartered in Mexico City, not Cuernavaca. Defs.' Brief at 10; citing *www.bridgestone.com.mx.* Similarly, the Mexican lawyers maintain their offices in Mexico City, not Cuernavaca. Plaintiffs do not provide a convincing explanation for why they chose Cuernavaca instead of Mexico City to pursue their claim. They speculate that this forum was selected in Morales because proceedings initiated in the state judicial system are handled more swiftly than those in Federal District of Mexico where Bridgestone/Firestone de Mexico, S.A. de C.V. is headquartered and that Cuernavaca is only a forty-five minute drive from Mexico City. Pls.' Response at fn. 9 and 10.

Gonzalez de Castilla del Valle testified that according to usual procedures, a court *should* admit a case that has a point of contact in the forum, even if the case does not appear to fall within the court's territorial competency, and give the defendant his or her right to consent to the competency of the court. Tr–I, p. 72, lines 5–13; see also Defs.' Brief at 10. Because the Fourth Court of First Instance for Civil Cases of the First District in Morelos lacked a point of contact with the case, and thus territorial competency, it refused to accept the case, a ruling "confirmed" by the Supreme Court of Justice of the State of Morelos. Plaintiffs appear to have contrived this "adverse" ruling by intentionally filing the case in a court lacking jurisdiction, and when the dismissal came, those orders by the Morelos courts could be and were submitted to the Seventh Circuit as proof that Mexican courts severally were unavailable.

## II. The Plaintiffs' Actions in Mexico Were Not Taken in Good Faith

The parties acknowledge that Plaintiffs' lawyers sought to have a Mexican court refuse jurisdiction over the case so that Plaintiffs' lawyers could argue during the appeal of this court's *forum non conveniens* decision that Mexico is not an available forum. See Defs. Brief at 4; Pls.' Resp. at 9. If the courts in Mexico were not willing to accept this case, they reasoned, a compelling argument to reverse the dismissal of the claim on *forum non conveniens* grounds would exist.[13] It was not the U.S. lawyers' strategy—to demonstrate that Mexico was not an available forum [14]—but the tactics employed by the Mexican lawyers they retained that has created the appearances of impropriety and bad faith.[15] The U.S. lawyers hired lawyers in Mexico whom they could not supervise nor ultimately rely upon and provided incentives to them to get the case

**13.** We are troubled by Plaintiffs' rationalization of what occurred in Mexico. In their Response Brief, Plaintiffs' counsel states:

The inescapable effect of an FNC [*forum non conveniens*] dismissal is that in its wake, the opposing parties must approach the question of jurisdiction in the alternate forum as if they are litigating through a mirror, where everything appears backwards. Each side "wins" by "losing" on jurisdiction in the alternate forum, which of course is the opposite of normal litigation where the plaintiff typically wants the court to have jurisdiction and the defendant does not.

Pls. Resp. at 12. If the law were as Plaintiffs suppose and if all plaintiffs whose claims were dismissed on FNC grounds held to this view, FNC dismissals would be irrelevant. A plaintiff would simply need to go to the foreign country, file a poorly stated claim in the wrong court and wait to have the claim dismissed. In Plaintiffs' view, this would entitle them to "return jurisdiction" and plaintiff would "win." Surely, this is not contemplated by *forum non conveniens* practice and procedures. Plaintiffs' desire to litigate in a foreign state is not the same as their ability to do

so. Evidence of a plaintiffs' inability to pursue their claim in a foreign forum is only as convincing as the case which was rejected by the foreign court.

**14.** Plaintiffs' U.S. lawyers stated that they believed that the chance that the Mexican court would accept the case and apply U.S. law was "realistically zero." Defs.' Brief at 8; citing Tr–II, p. 273, lines 16–19. Further, Alberto Guerrero testified that if this case proceeded in a Mexican court under Mexican law, it would be a "disaster." Defs.' Brief at 8; citing Tr–II, p. 240, lines 12–14.

**15.** Plaintiffs argue that their subjective desire that jurisdiction be denied in Mexico cannot be proof that they acted in bad faith, because this would force them to abandon their professional opinion that it was in the best interest of Ms. Lopez to litigate her claims in the U.S. Pls.' Resp. at 9. It is not Plaintiffs' desire that incurs the Court's censure but the actions they undertook to fulfill that desire. It was never in Ms. Lopez's best interest to have a fraudulent judgment entered in her favor or a fraud committed on the Seventh Circuit Court of Appeals.

dismissed. This calculated strategy would not allow a fair test of whether Mexico was, in truth and fact, an available forum, but it would create the impression that it would and had. Obviously, an intentionally deficient complaint filed in the wrong court will likely generate an order of dismissal. Because the Morelos court orders were obtained in bad faith, U.S. courts are foreclosed from honoring them.[16]

### A. The Mexican Lawyers had an Economic Incentive to Get the Case Dismissed

■ The Mexican lawyers were paid by the U.S. attorneys $20,000 for expenses and their retainer provided that they were entitled to 10% of the gross recovery "if they [were] successful in having the case dismissed."[17] Defs.' Brief at 7; Defs.' Exh. 1; Tr–I, p. 189, lines 21–25—p. 190, line 1. This understanding was memorialized in a written fee agreement, dated July 9, 2004. Defs.' Brief at 7; citing Defs.' Exh. 3, p. 2; Tr–I, p. 207, lines 11–13. The Mexican lawyers have provided the U.S. lawyers with no receipts, statements, or other accounting of how the $20,000 expense fund was spent nor has it been refunded. Defs.' Brief at 7; citing Tr–I, p. 210, lines 17–25—p. 211, lines 1–4. Alberto Guerrero testified that he was not concerned about how the money was spent by the Mexican co-counsel, but assumed that some of the money went to pay local counsel in the initial heirship proceeding in the State of Guerrero. Tr. I, p. 210, lines 4–25—p. 211, lines 1–4, 16.

### B. The Case Was Filed in Morelos to Take Advantage of Juan Carlos Guerrero Valle's Familial Relationship to Court Official, Claudia Guerrero Valle

Claudia Guerrero Valle is the sister of Plaintiffs' Mexican lawyer, Juan Carlos Guerrero Valle. She held the position of *secretaria de acuerdos* of the Fourth Civil Court of the First Judicial District of the State of Morelos, Mexico, which sits in Cuernavaca and is the court in which Plaintiffs' lawsuit was filed.

In Mexican litigation, an *acuerdo* is any order entered by the judge prior to the final judgment. Thus, a *secretaria de acuerdos* is, in English, the secretary of orders. This official must be a lawyer. Among other job duties, a *secretaria de acuerdos* must read each motion submitted by the parties. After reading the motion and response, the *secretaria de acuerdos* recommends a resolution to the judge and at the same time presents the judge with a draft order. Although the ultimate authority for ruling rests with the judge, both the *secretaria de acuerdos* and the judge must sign the order.

---

16. Plaintiffs argue in their Response brief that in reaching a correct result the Morelos Court could not have been misled by Plaintiffs' bad faith. We disagree with this "no harm, no foul" analysis.

17. A letter dated May 5, 2004, suggests that Alberto Guerrero's firm's contingency fee arrangement with Ms. Lopez entitles them to 45% of the gross amount of any recovery by Mrs. Lopez, and that five percent of the gross recovery has been assigned to Kevin Dubose. Defs.' Exh. 2. On July 9, 2004, Alberto Guerrero and Roger Reed sent a letter to Dr. Pereznieto setting forth the terms of their joint venture, which agreement confirms that, in consideration for legal services to be performed in Mexico on behalf of Ms. Lopez, the Mexican lawyers (that is, Pereznieto, his firm, and Rosa Maria Avila Fernandez's and Juan Carlos Guerrero Valle's firm) are assigned 25% of any attorney's fees to which Reed, Carrera & McLain, LLP may be entitled following any settlement with Ford and/or Firestone. Defs.' Exh. 3. Thus, the Mexican lawyers would be entitled to 10% of Plaintiffs' gross recovery figured on the basis of the 25% of the U.S. lawyers' 40% (45% minus the 5% assigned to Dubose) equals 10% of the gross recovery.

Defs.' Findings at 6. Like other *secretaria de acuerdos,* Claudia Guerrero Valle is a lawyer, and one of her duties with the court is to draft all orders issued in a case prior to the final judgment and present those orders to the judge for final approval. Defs.' Brief at 11; citing Tr–I, p. 90, lines 18–19, lines 23–25—p. 91, lines 1–11.

The U.S. lawyers represent that they did not know of Claudia Guerrero Valle's position within the Morelos court until the fall of 2005. Tr–I, p. 221, lines 1–9. Regardless of when Plaintiffs' U.S. lawyers knew or should have known that Claudia was both the *secretario de acuerdos* of the Fourth Civil Court of the First Judicial District of the State of Morelos,[18] and the sister of one of the Mexican lawyers, it is clear that Plaintiffs' Mexican attorneys were privy to this information from the outset.

Defendants contend that Morelos law requires a *secretario de acuerdos* to recuse herself from a case in which a relative by blood or affinity has an interest. Defs.' Brief at 13; citing Defs.' Exh. 37; Tr–I, p. 117, lines 11–25—p. 118, lines 1–23. Articles 49, 50, 51, and 52 of the Morelos Code of Civil Procedure specify the instances in which certain judicial officers must recuse themselves from a matter. Article 50 provides that an official has an impediment in serving in a case where her "consanguineous relatives" (which includes a sibling) have a direct or indirect interest in the case. Article 51 states that:

> Any Magistrate [an appellate Judge], Judge, Secretary or Court Clerk must excuse himself from hearing the matters in which there are any of the impedi-

ments indicated in the previous article. . . .

Defs.' Exh. 37.

Plaintiff's expert, Mr. Santos–Coy, testified that he was in agreement that the relationship between Juan Carlos Guerrero Valle and Claudia Guerrero Valle would have required Claudia Guerrero Valle to recuse herself if the court decided to *admit* the case. Tr–II, p. 359, lines 19—p. 361, lines 12. This opinion is based on Article 56, Section 5 of the Morelos Code of Civil Procedure, which provides that recusal is not required in "proceedings that do not involve hearing a case, or establishing of jurisdiction." Pls.' Response at 29; citing PX–28A. Further, even though Morelos law provides that all orders signed by a judge who should have been recused are void, there is no provision for voiding orders in cases where another court official should have been recused; and therefore, even if the *Secretaria de Acuerdos* were required to recuse, the dismissal would remain valid. Pls. Response at 29. Mr. Gonzalez de Castilla, a current member of the Mexican Bar Association's Ethics Committee, testified that Claudia Guerrero Valle was required to recuse herself and that the statutory exception invoked by the plaintiffs applies only to noncontested matters. Tr. I, p. 174, ln. 17–p. 176, ln. 6.

If Plaintiffs and their expert, Mr. Santos–Coy, are correct, what would be the reason that Juan Carlos Guerrero Valle did not identify himself as a lawyer for Plaintiffs in the Complaint, we ask ourselves. The original complaint identified only Rosa Maria Avila Fernandez (Juan

---

**18.** Plaintiffs' U.S. lawyers knew on July 6, 2004 that Juan Carlos Guerrero Valle was from Cuernavaca. Defs.' Exh. 1. Alberto Guerrero also received two emails from Leonel Pereznieto which referred to Juan Carlos making "the necessary contacts at the Cuer-

navaca courts" (Defs.' Exh. 4, dated July 21, 2004) and needing "to take advantage of [Juan Carlos'] enthusiasm, his knowledge, and his contacts." (Defs.' Exh. 7, dated November 4, 2003).

Carlos Guerrero Valle's then-wife and Claudia's then-sister-in-law) as a lawyer for the Plaintiffs. Defs.' Exh. 23; at Exh. A, numbered p. 2, final paragraph. Defendants argue that the Plaintiffs' lawyer intentionally omitted Juan Carlos Guerrero Valle as one of the Plaintiffs' lawyers in the text of the complaint in an effort to hide the most obvious basis for Claudia Guerrero Valle to recuse herself. Defs.' Brief at 13. However, in an exhibit to the original complaint, it is noted that Juan Carlos Guerrero Valle was Mrs. Mañez's lawyer in her heirship proceeding. Defs.' Brief at 13; Defs.' Exh. 23, at Exh. A fifth p. following numbered p. 13; Tr–I, p. 118, lines 8–10. Defendants argue that, in any event, the presence of Rosa Maria Avila Fernandez, then the wife of Juan Carlos Guerrero Valle and sister-in-law of Claudia Guerrero Valle, was enough to require Claudia Guerrero Valle to recuse herself. Defs.' Findings at 17–18. Defendants contend that the presence of either Rosa Maria Avila Fernandez or Juan Carlos Guerrero Valle as counsel for Plaintiffs independently required Claudia Guerrero Valle to refuse to handle the case. Defs.' Brief at 13; citing Tr–I, p. 118, lines 15–23. We accept Mr. Gonzalez de Castilla's interpretation of the law and conclude that Claudia Guerrero Valle should have recused herself. Having failed to do so, we assume her reasons were not based in good faith and honest public service.

### C. Improper Contact with Judge

New civil cases filed under Mexican procedural rules are assigned sequentially to the six civil courts in the First Judicial District in Morelos utilizing a computer system in the general intake office. Tr–I, p. 83, lines 1–5; p. 92, lines 9–11; p. 95, lines 11–21. Once a case is assigned to a particular court, the judge of that court assigns the case to one of the *secretarias de acuerdos*. Tr–I, p. 83, lines 22–25—p. 84, lines 1–2; p. 95, lines 6–10. Each civil court has three *secretarias de acuerdos* assigned to it. Tr–I, p. 83, lines 20–2; p. 92, lines 12–15. Thus, had the Plaintiffs' Morelos lawsuit been filed and assigned according to standard protocols, Plaintiffs would have had a one-in-eighteen chance of being assigned to *secretaria de acuerdos* Claudia Guerrero Valle. Defs.' Brief at 13.

A January 12, 2005 email sent by Juan Carlos Guerrero Valle to Alberto Guerrero at 10:00 a.m. states, "Just to inform you that the claim has already been presented in Cuernavaca. Tomorrow we will be traveling to Cuernavaca to talk with the judge who will issue the judgment." Defs.' Exh. 10. However, the file-stamp date on the complaint is January 13, 2005, at 11:27:23. Defs.' Exh. 23 at Exh. A (page immediately preceding complaint); Tr–I, p. 94, lines 3–17. Based on the date of the file-stamp, Juan Carlos Guerrero Valle would not have legitimately known on January 12 when he emailed Alberto Guerrero who the assigned judge would be, because the complaint had not yet been officially filed. There is no explanation for what Juan Carlos Guerrero Valle meant when he reported that it had already been "presented in Cuernavaca" because none of the Mexican counsel including Juan Carlos Guerrero Valle agreed to testify in connection with this inquiry. See *infra* Section F.

On January 14, 2005, Juan Carlos Guerrero Valle again emailed Alberto Guerrero to report, "[W]e went to the Cuernavaca Morelos courthouse to find out about the case against Firestone. The judge confirmed that she will throw out the suit according to what we planned. The agreement of that denial will be published next week." Defs.' Exh. 11.

This email is a "smoking gun" for numerous reasons. First, Juan Carlos Guerrero Valle sent this email the day after the complaint was officially filed with the Morelos court. Typically, this court was informed, it takes the general intake

office a day to provide the physical case file to the judge to whom the case is assigned, suggesting that the Morelos court to which the case was assigned would likely have received the case file on January 14, 2005, the day after the case was filed. Tr–I, p. 95, lines 6–8. Thereafter, it usually takes at least another day before the assigned *secretaria de acuerdos* reviews the papers in the file. Tr–I, p. 95, lines 24–25—p. 96, lines 1–8; p. 110, lines 6–14. Juan Carlos Guerrero Valle disclosed in his email message that he had conversed with the judge concerning the case on the day after the complaint had been filed in the general intake office.[19]

The second reason for suspicion here is that Juan Carlos Guerrero Valle was not authorized under the applicable rules of procedure to have access to the case file or to speak with the judge, because his name was not included in the complaint as the plaintiffs' counsel. Under Mexican law, only the parties and those persons expressly authorized by the parties may secure access to the file or to the judge.[20] Defs.' Brief at 17; citing Tr–I, p. 51, lines 17–25—p. 96, lines 1–8; p. 110, lines 6–14.

Finally, expert testimony explained that, while *ex parte* communications are common in Mexican courts, the judge does not typically tell the inquirer how she is going to rule on a matter. Tr–I, p. 103, lines 16–25—p. 104, lines 1–9; p. 109, lines 20–23;

p. 110, lines 2–7. The first time anyone may properly receive notice of a court's ruling is when the ruling is published in the official bulletin. Defs.' Brief at 17; citing Tr–I, p. 79, lines 12–25—p. 80, lines 1–8; p. 86, lines 5–8; p. 110, lines 15–21. In this case, the rejection order was signed on January 20, 2005, and was published in the official bulletin on January 24, 2005—ten days after Juan Carlos Guerrero Valle sent the email to Alberto Guerrero announcing that the judge confirmed she would throw out the case as planned. Defs.' Brief at 17; citing Defs.' Exh. 30; Tr–I, p. 79, lines 15–17.

### D. Court's Order was Substantively Identical to the Draft Rejection Order Submitted by Plaintiffs' Lawyers

Under Mexican judicial procedures, it is improper to submit any proposed order to a Mexican state court. Defs.' Brief at 15; citing Tr–I, p. 101, lines 20–25—p. 102, lines 1–2; p. 103, lines 6–15. Nonetheless, Plaintiffs' Mexican lawyers drafted and tendered to the court an order rejecting the plaintiffs' lawsuit for lack of territorial competency. Defs.' Exh. 9. On January 24, 2005, Juan Carlos Guerrero Valle emailed Alberto Guerrero and included as an attachment an unsigned copy of the court's rejection order.[21] Defs.' Exh. 14, p. 2. This unsigned draft order [22] is substan-

---

**19.** Defendants contend that Juan Carlos Guerrero Valle spoke with the judge about the case on the day it was filed in the general intake office. We do not understand this assertion, however, based on the date the case was filed and the date the email was sent. Defs.' Brief at 17.

**20.** As discussed in Section II.B., we have concluded that Juan Carlos Guerrero Valle's name was intentionally omitted as one of Plaintiffs' lawyers in an effort to hide the most obvious basis for Claudia Guerrero Valle to recuse herself.

**21.** Juan Carlos Guerrero Valle told Alberto Guerrero in another message a copy of which was admitted into evidence that it would take two months to prepare the claim but only one and a half months for the "[p]resentation of the claim and the obtaining of a resolution dismissing the lawsuit with the grounds we need." Defs. Exh. 6. This statement evidences that the Mexican lawyers, particularly Juan Carlos Guerrero Valle, knew that particular grounds would be stated in the court's dismissal, and clearly that is what came to pass.

**22.** This version was unsigned and contained no stamp, seal, or other marking to indicate it

tively identical to the draft (improperly) submitted by Plaintiffs' lawyers to the Morales court. *Compare* Defs.' Exh. 13, first attachment, with Defs.' Exh. 9, second attachment. While ordinarily Mexican lawyers do not have access to unsigned versions of the court's orders, a lawyer may obtain a "simple copy," which is an uncertified copy, but even a simple copy is signed by the judge. Tr–I, p. 113, lines 14–25—p. 114, lines 1–17.

The draft petition filed with the Morales court includes a paragraph identifying Dr. Pereznieto and Rosa Maria Avila Fernandez as the Mexican lawyers authorized by plaintiffs to represent them. As we have previously noted, Juan Carlos Guerrero Valle's name is not included in this list. The absence of Juan Carlos Guerrero Valle's name is significant for the additional reason that he was "the only attorney who had any contact with any Mexican court, judge, court personnel or other public official regarding the 'Plaintiffs' Claims' or the 'Underlying Accident,' other than through written pleadings …". Defs.' Findings at 7 (referring to Pls.' Resp. To Interrogatory). And, again, as previously noted, in the Mexican legal system, no attorney not "authorized" by a plaintiff is permitted access to the files or speak with court personnel about the case. Defs.' Findings at 17.

### E. Improprieties during Appeal in Mexico

On April 19, 2005, Juan Carlos Guerrero Valle sent Alberto Guerrero an email stating: "This letter is to inform you that unofficially, the Court of Appeals confirmed the denial of the suit in Cuernavaca. One of the magistrates is giving us an unofficial copy of the decision on Saturday." Defs.' Exh. 19. This email evinces two procedural improprieties reflecting counsel's manipulations of the process: 1)

under Mexican procedural rules, judges do not disclose their rulings in advance; and 2) the appellate courts of Mexico do not conduct official business on Saturdays. *See* Defs.' Brief at 21; citing Tr–I, p. 124, lines 11–22.

### F. Adverse Inferences

■ On June 5, 2006, the Mexican lawyers (i.e., Dr. Leonel Pereznieto, Juan Carlos Guerrero, and Rosa Maria Avila Fernandez) sent a letter to the U.S. lawyers communicating their refusal to testify in the proceedings at bar and requesting that the U.S. lawyers so inform the Court. Pls.' Resp. to Bench Memo at 2; Defs.' Findings at 13. The Mexican attorneys asserted as grounds for their refusal that testifying would put them in violation of Mexican criminal law and their attorney Code of Ethics. Defs. Exh. 28; Tr. II, p. 292, ln. 22–p. 293, ln. 14. Juan Carlos Guerrero refused to testify on the further ground that he had not been "authorized" to represent the Plaintiff in the Morelos litigation. See Defs. Exh. 28.

Plaintiffs' U.S. counsel concede that, if Mexican counsel were concerned that attorney-client or discovery issues would impede their ability to testify, they did not raise these issues when their testimony (by deposition) was first requested. Pls.' Resp. To Bench Memo. at 3. Further, Mr. Gonzalez de Castilla, a current member of the Mexican Bar Association's Ethics Committee, testified at the hearing on remand that the Mexican attorneys' stated reasons for refusing to testify are disingenuous. Tr. I, p. 127, ln. 18–p. 128, ln. 18. Accordingly, we deem it proper to infer that any testimony Leonel Pereznieto, Juan Carlos Guerrero Valle, and/or Rosa Maria Avila Fernandez would have provided in these proceedings would have been adverse to Plaintiffs' position that the

---

was from the court's file. Defs.' Exh. 13 (first attachment).

Mexican lawyers pursued the case in Morelos in good faith. Defs.' Findings at 14. *See Wahlgren v. Bausch & Lomb Optical Co.*, 68 F.2d 660, 663 (7th Cir.1934) (holding that a defendant's failure to testify justified an assumption that his testimony would have been worse than his silence); *P.R. Mallory & Co. v. NLRB*, 400 F.2d 956, 959 (7th Cir.1968) (concluding that failure of defendant's foreman to testify regarding his conversation with a fired employee gave rise to a presumption against the defendant); *NLRB v. Advance Transp. Co.*, 965 F.2d 186, 195 (7th Cir. 1992) (holding that the defendant's failure to offer an employee's "work cards," on which it purportedly based its decision to terminate him, gave rise to an inference that the cards would have undermined defendant's position). Specifically, the Mexican attorneys' refusals to testify to rebut or explain the substantial evidence against them of bad faith permits the following adverse inferences:

1) the Mexican lawyers filed the lawsuit in Morelos for the intended purpose of exploiting the position of Juan Carlos Guerrero's sister, Claudia Guerrero Valle, at the court to obtain the ruling they desired and in fact received.

2) the assignment of the case to the court where Claudia Guerrero Valle worked, and then to her, as one of the court's three *secretaria de acuerdos*, was orchestrated by plaintiffs' Mexican lawyers to ensure a dismissal ruling in accordance with their plan and intentions.

## G. Pereznieto's Affidavit to the Seventh Circuit

Nearly six months after the Seventh Circuit heard oral argument on plaintiffs'

appeal of the trial court's dismissal of their case on *forum non conveniens* grounds, plaintiffs' counsel submitted both Morelos court orders to the Seventh Circuit. See n. 1, *supra*. Subsequently, plaintiffs' submitted to the Seventh Circuit the expert affidavit of Dr. Pereznieto in support of their argument that the Morelos orders demonstrate that Mexico is not an available forum. Defs. Exh. 24. Dr. Pereznieto thus played a double role in this attempted fraud on the court—as Plaintiffs' Mexican counsel in the Morelos suit and as an expert witness. In addition, he accepted a contingent fee interest in Plaintiffs' recovery from the Defendants as compensation for his work. Defs.' Exh 2, 24. The U.S. lawyers' submission of Dr. Pereznieto's affidavit to the Seventh Circuit in July 2006, without disclosing that he was interested in the outcome of the case, was surely disingenuous. *Anderson Producing, Inc. v. Koch Oil Co.*, 929 S.W.2d 416, 424–25 (Tex.1996); see Pls.' Brief at p. 35; Defs. Exh. 24. Plaintiffs' U.S. lawyers are fully aware that the Texas Disciplinary Rules of Professional Conduct 3.04[23] prohibit a lawyer from offering the testimony of a witness with a contingent interest in the case. Defs.' Findings at 22; Defs.' Reply at 7. Plaintiffs' counsel, Kevin Dubose, has admitted that he should have advised the Seventh Circuit of Dr. Pereznieto's contingent fee interest in the case (Tr. I, p. 199, ln.15–p.200, ln.6).

## H. Plaintiffs' Failure to Disclose the Morelos Proceedings to the Defendants and the Seventh Circuit

"The emails between plaintiffs' counsel leave no doubt that they purposefully concealed the proceedings in Mexico from both the Seventh Circuit and the defen-

---

**23.** Tex. Disciplinary R. Prof'l Conduct 3.04(b) states that a lawyer shall not pay, offer to pay, or acquiesce in the offer or payment of com-

pensation to a witness contingent upon the content of the testimony or the outcome of the case.

dants until it was too late for the defendants to do anything in response." Defs.' Br. at 3; Defs.' Reply at 16, Def. Exh. 14. Mexican procedural law does not require Plaintiffs' counsel to disclose their intention to file a lawsuit in Mexico to the U.S. Courts or to defense counsel. Our understanding is that under the law in Morelos, the court, not the plaintiff, notifies the defendant of the filing of a lawsuit against it and serves a summons on the defendant to appear only if the court first determines that it might have territorial competency over an action and therefore admits the case for further proceedings. (Tr–I p. 166, lines 20–21; J. Santos–Coy, Tr–II, p. 346, lines 22—p. 347, line 9; p. 367 lines 12–23; p. 366, lines 15—p. 367, line 11.) Therefore, we do not view it as improper for the Plaintiffs to have failed to disclose the Morelos Proceedings to Defendants in advance of the filing of that action.

### III. Are the Mexican Court Decisions Entitled to Recognition Here?

■ We have no difficulty or hesitancy in concluding, on the basis of the evidence adduced at the hearing that the Morelos court decisions tendered to the Seventh Circuit are not entitled to recognition in the United States, based on the underlying fraudulent activity by the plaintiffs' Mexican attorneys, as thoroughly explained in section II of this opinion and because, "for purposes of U.S. law a forum may not become unavailable by way of fraud." [24] *In re: Bridgestone/Firestone*, 420 F.3d at 707. The application of this principle is consistent with the Supreme Court's landmark decision, *Hilton v. Guyot*, 159 U.S. 113, 16 S.Ct. 139, 40 L.Ed. 95 (1895), in which it was stated that no foreign judgment should be honored by a U.S. court if "some special ground is shown for impeaching the judgment, as by showing that it was affected by fraud or prejudice...." *Id.* at 159–60, 16 S.Ct. 139.

The abundant circumstantial evidence that the Morelos orders were obtained by fraud, coupled with the adverse inferences compelled by the Mexican lawyers' refusal to testify, leads us to conclude that the Morelos orders were, in fact, obtained by fraud and thus are not entitled to recognition by courts in the United States.

### Conclusion

The task assigned to us by the Seventh Circuit was clear:

> If ... the court concludes that the Morelos decisions are not entitled to recognition or that the plaintiffs did not act in good faith and manipulated the dismissal of their case in Mexico, the district court should regard itself as free once again to dismiss this complaint.

*Id.* Having determined that the Morelos judicial decisions were obtained not in good faith, but through fraud, and that they accordingly are not entitled to recognition in the United States, we renew our initial order of dismissal of Plaintiffs' complaint on *forum non conveniens* grounds. IT IS SO ORDERED.

---

**24.** Defendants contend that Texas procedural law governs whether the Morelos court decisions should be recognized in the United States, citing the Texas State Civil Practices and Remedies Code Annotated Sections 36.001—36.008. This provision—at best—offers general guidance regarding whether a court decree from another country should be recognized, but applies only to money judgments, which the Morelos orders are not. Even so, the cited Texas statute provides as one discretionary ground for non-recognition of foreign judgments that "the judgment was obtained by fraud."